IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ONEX, INC., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | CIVIL ACTION - LAW |
| v. | ) | |
| | ) | NO. |
| RATH USA INCORPORATED, | ) | |
| | ) | |
| *Defendant*. | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff ONEX, INC., by its attorneys the Mizner Law Firm, files this Complaint and states:

### A. Parties

1. Onex, Inc. ("Onex") is a Pennsylvania corporation with its principal place of business at 917 Bacon Street, Erie Pennsylvania, 16511.

2. Defendant Rath USA Incorporated ("Rath") is a Delaware corporation with a registered address of 300 Ruthar Drive, Newark Delaware, 19711.

### B. Jurisdiction and Venue

3. This court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the parties, and the amount in controversy is greater than $75,000.

4. This court has personal jurisdiction over the parties because the terms and conditions of the contract which binds the parties expressly state that the laws of Pennsylvania shall apply to any dispute, and that the proper venue shall be the federal or state courts situated in Erie County, Pennsylvania.

5. Venue is proper in Western District of Pennsylvania pursuant to 28 U.S.C § 1391, because the events giving rise to this Complaint occurred within this district.

## C. Facts

6. Onex is a contractor and installer of refractory products, and is therefore engaged in the purchase and installation of insulating material for industrial furnaces.

7. One of the products which Onex purchases and installs on behalf of its clients is ceramic fiber. This fiber lines the interior metal shell of industrial furnaces to reduce heat loss and prevent the heat from impacting and/or damaging the metal furnace shell, which could thereby damage other aspects of its clients' facilities and operations.

8. However, due to the high heat which the insulating refractory material must withstand, a common problem is that the material shrinks over time as a furnace is heated and cooled repeatedly. This shrinkage causes gaps in the protection which the insulating material provides, which not only causes the furnace to lose heat and become less efficient, but also creates a safety hazard.

9. Rath is a designer and manufacturer of insulating refractory material. Its website states:

> Let our Rath Engineers design your lining or redesign your replacement lining. Rath linings provide superior energy efficiency, offer long life, and decrease maintenance costs. We provide linings for applications up to 1800°C in electric and gas-fired furnaces and kilns. From brick to fiber linings, flat roof, arch, bell, car bottom, or elevator, Rath will optimize your furnace to decrease maintenance outages and increase production time while decreasing energy costs.

10. In early 2017, Onex was looking for a new insulating material to install at various furnaces, and inquired with Rath about the products which it could offer.

11. In particular, Onex was looking for an insulating material which would shrink less than the products which it was currently installing.

2

12. Onex representatives met with a Rath salesman, Rick Sabol, who informed them that Rath was producing an insulating material call Alsitra blankets.

13. Onex specified that it required a insulating material that would not shrink significantly in furnaces that operate up to 2500 degrees fahrenheit.

14. Mr. Sabol showed the Onex representatives a PowerPoint presentation which claimed that the Alsitra blankets would shrink significantly less than the competitor's insulating refractory material.

15. Mr. Sabol sold Onex on a particular product called Alistra 1400 (HP) through a PowerPoint presentation that showed the difference in shrinkage as being "50-75% less than the competitor."

16. Below is a slide from the presentation, showing the Rath product beside a competitors, which had been heated to 1300 degrees Celsius for twenty-four hours.



17. The next slide from Mr. Sabol's presentation purports to be the Rath and competitor's product side by side, after both were exposed to 1550 degrees Celsius for twenty-four hours.



Alsitra 1400 (HP) vs AZS 1400Z (spun i.e. Durablanket)

Alsitra 1400/128 (Blown) and Durablanket (Spun) 1400 AZS/128
overfired - Shrinkage at 1550°C / 24 h

18. These slides clearly show that Rath's Alsitra blankets generally retain their size when exposed to furnace heat, especially compared to the competitor's product.

19. Although the Alsitra blankets were significantly more expensive than the competitor's product, based on this presentation, and Rath's claim that its Alsitra blankets would shrink 50-75% less than its competitor, Onex decided to purchase the Alsitra blankets for installation at its clients' facilities.

20. In March 2017, Onex purchased and later began installing the Alsitra blankets in its clients' facilities, including at Lapp Industries.

21. The purchase of this material was subject to Onex's Terms and Conditions, which are attached hereto as Exhibit A. In pertinent part, the terms and conditions provide as follows:

> (b) **Non-Conforming Goods.** In the event Onex rejects the Goods tendered by Vendor, Onex may, in its sole discretion and in addition to any other remedies available under law, either (i) require Vendor to immediately replace the Goods or such portion of the Goods which Onex has determined do not conform to the Specifications at Vendor's own cost; (ii) correct, rework, and/or repair the Goods with all costs associated therewith to be charged to and paid by Vendor; (iii) reduce the quantity of goods purchased by Onex hereunder; or (iv) terminate the Purchase Order and secure replacement Goods. Vendor shall bear any and all incidental costs associated with such rejection, including without limitation costs of removal, transportation, storage, and disposal of any non-conforming Goods

from Onex's premises and shall bear complete and full responsibility for any other loss or damage.

(c) **Onex's Damages**. In the event of termination of the Purchase Order by Onex as set forth in paragraphs (a) or (b)(ii) above, replacement of Goods as set forth in paragraph (b)(i) above, or any breach of Vendor's obligations or warranties under the Purchase Order, Onex shall be entitled to recover, in addition to any other damages or remedies otherwise available to Onex by law, damages to compensate Onex for any and all increased costs or losses, or other consequential damages of any kind resulting from the termination of the Purchase Order or the delay in delivery of the Goods by Vendor. All direct and incidental costs of rejecting and removing any non-conforming Goods shall be borne exclusively by Vendor.

22.     Onex installed the Alsitra blankets as insulation for several clients, in at least sixteen insulation projects. The total value of the Alsitra blankets installed in those projects was $37,762.00, while the total cost of replacing the Alsitra blankets in all those projects is $442,174.00.

23.     However, almost immediately, Onex became aware that Rath's product was not performing as promised.

24.     In November 2017, Lapp Industries informed Onex that the Alsitra blankets which it had recently installed was shrinking significantly more than the competitor's product which was previously installed at Lapp.

25.     Lapp provided this photo to Onex, showing that the blankets had already separated by four inches over a span of 8 feet, leaving a large gap in the insulation around the furnace.

26.     According to Rath's data sheet, the Alsitra blanket's shrinkage should be 2% loss of area when exposed to 1200 degrees celsius for 24 hours.

27.     However, the Lapp furnace operated below this temperature for 22 hours and the shrinkage across 8ft was four inches, about twice as much area loss as the data sheet claimed.



28. In an attempt to mitigate the harm from the large gaps in the insulating material, Lapp was forced to pack the gaps with additional material each weekend.

29. As soon as Lapp informed Onex of this problem in November 2017, Onex told Mr. Sabol and Rath about the issue, with the understanding that it was Mr. Sabol who could authorize Onex to reline the furnace with a competitor's product to fix the problem.

30. On or about January 10, 2018, Onex sent a letter to Rath care of Mr. Sabol, which stated in part:

> What is known is that Onex has installed the defective Alsitra blankets as insulation for many clients, in at least sixteen projects. The total value of the Alsitra blankets in these projects is $37,762,00. However, the total cost of those projects to the clients is calculated at $443,174.00. Onex will suffer significant losses if the insulation work on those projects must be redone, which would include removing the defective Alsitra blankets and replacing it with proper insulation.

31. In addition to informing Rath about the potential liability from the various projects in which the defective Alsitra was installed, Onex put Rath on notice of how it intended to proceed with Rath's open invoices and unused product:

6

As of this date, Onex is expecting, but has not received, a warranty claim from LAPP Insulators. Onex will review that anticipated claim to determine whether LAPP is demanding a full replacement of the work performed by Onex. If so, please be advised that Onex will cease payment of open invoices….

Finally, in addition to the blankets that were installed in various projects, there is unused stock held in Onex's Erie and Pittsburgh locations which must be returned to a Rath location. The purchase price was $43.57 per box for an estimated blanket value of $24,486.34 in stock.

- 155 boxes in Erie
- 4 boxes you picked up from Erie
- 403 boxes in Pittsburgh

Set forth below are the Invoices related to the Alsitra blankets purchased from Rath:

- Inv#90430264 (Onex PO#E13395)  $17,428 Paid
- Inv#90432679 (Onex PO#E13395)  $ 4,249.20  Unpaid
- Inv#90426442 (Onex PO#E13263)  $17,428 Paid
- Inv#90432944 (Onex PO#E13396)  $17,428 Unpaid

32.   A true and correct copy of this letter is attached hereto as Exhibit B.

33.   A few weeks later, a representative of Onex, Mr. Andrew Walters, and Mr. Sabol visited the Lapp facility on January 29, 2018, to inspect the furnace and Alsitra blankets themselves.

34.   After reviewing the shrinking Alsitra, Mr. Walters and Mr. Sabol mutually agreed that Onex would reline the furnaces, and informed Lapp of the decision.

35.   An Onex salesman named Greg Trohoske emailed Ms. Walters about the January 29th meeting, and summarized it as follows:

Highlights: The meeting started out with Rick Sabol apologizing to Dan Maxwell for the shrinkage that Lapp Insulators is experiencing with the Rath fiber blanket. Rick also stated, "I do not care if you never buy our product again. I have the backing of our corporate office to do what-ever it takes to make this right." Dan Maxwell provided documentation of the various temperatures of the shell, including the hot spots. We proceeded to the three (3) kilns that were relined for a

7

visual inspection. Rick Sabol stated to me, I do not know which material you are going to use. The only thing I ask, is that one of our representatives (Dave Earnst) be here for the tear outs. I want Dave to take samples from each Kiln, and we will get the material analyzed by our people and by an outside source to compare. The meeting concluded with myself asking Dan Maxwell for a start date, to tear out all the Rath Fiber and Install the HTZ Fiber.

36. This email confirmed that Mr. Sabol had authorized the repairs which Onex undertook at Lapp, and was expressly invoking Rath's corporate office as approving his authorization.

37. After telling Lapp that Onex would reline the furnaces, however, Rath attempted to back-pedal by arguing that they wanted to wait for three months to see if the shrinkage would stop, despite the fact that that ceramic fiber continues to shrink over its installed life.

38. Rath's demand was not reasonable or practical, given the shrinkage had already been occurring for three months, without stopping. Lapp employees were continuing to repack the gaps caused by the shrinkage on a weekly basis.

39. Finally, after Lapp threatened legal action against Onex and Rath if the defective Alsitra was not replaced, on February 12, 2018, Mr. Sabol and Ms. Ashleigh Walters, Onex's general manager and owner, decided to move forward with the relining the furnaces with new refectory material.

40. Onex conducted the re-installation, and forwarded the invoice for the repair work to Rath on April 19, 2018.

41. Onex conducted the repair and re-installation in reliance on Mr. Sabol's apparent authority to authorize the work on behalf of Rath.

42. To that point, Onex had never received any indication that Mr. Sabol was not authorized to bind Rath in its agreements with Onex, and in fact Mr. Sabol held himself out as the agent with whom Onex should communicate about such matters.

43. On April 20, 2018, Ms. Walters received a phone call from Michael Reisner, the general manager at Rath.

44. Mr. Reisner objected to Onex invoicing Rath for the repair work, on the grounds that Rath's "R&D/technical experts" had not authorized the repairs.

45. In addition to refusing to accept the invoices for the work which Mr. Sabol had approved, Mr. Reisner demanded that Onex remit payment in full on all open invoices to Rath within one week.

46. Onex has become concerned that Rath will attempt to completely repudiate the information and authorization provided by Mr. Sabol, and will not take responsibility either for its product's failure to meet the either the warranty of fitness for a particular purpose, or for the costs of repairing and replacing the defective product.

47. Onex has learned that Rath has fired M. Sabol, and beleives Rath will attempt to use this firing to further distance itself from Mr. Sabol's representations to Onex about the quality of the Alsitra blankets and his approval of the relining at Lapp.

## COUNT 1 - BREACH OF WARRANTY

48. The preceding averments are incorporated by reference herein as it set forth fully below.

49. Section 2315 of Pennsylvania's Uniform Commercial Code governs implied warranties of fitness for a particular purpose, which applies:

> Where the seller at the time of contracting has reason to know:
> (1) any particular purpose for which the goods are required; and
> (2) that the buyer is relying on the skill or judgment of the seller to select or furnish suitable goods; there is unless excluded or modified under section 2316 (relating to exclusion or modification of warranties) an implied warranty that the goods shall be fit for such purpose.

13 Pa.C.S.A. § 2315.

50. "A 'particular purpose' differs from the 'ordinary purpose' for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains." *Gall v. Allegheny Cnty. Health Dep't*, 521 Pa. 68, 76 (1989).

51. Here, Rath knew that Onex's purpose was to obtain and install insulating refractory material which would shrink less than the material which it was currently using.

52. Onex was induced to purchase the Alsitra blankets specifically because of Rath's statement that it would shrink "50-75% less" than its competitor's material.

53. However, it quickly became apparent that the Alsitra blankets were shrinking more quickly than the other material which Onex had previously installed.

54. Rath's representative, Mr. Reisner, has expressly refused to pay for the costs Onex has incurred in replacing Rath's defective Alsitra blankets.

55. Moreover, Onex anticipates that it could continue to receive claims for replacement from other customers about Rath's Alsitra blankets which it purchased and installed.

56. As a result, Onex has suffered and will continue to suffer damages from the Alsitra blanket's failure to perform the particular purpose for which Onex purchased it.

WHEREFORE, Plaintiff Onex, Inc. respectfully requests that judgment be entered in its favor and against Defendant Rath USA Incorporated in an amount exceeding $75,000.00, along with all other relief allowed by law.

## COUNT II - BREACH OF CONTRACT

57. The preceding averments are incorporated by reference herein as it set forth fully below.

58. To successfully maintain a cause of action for breach of contract the plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages. *Hart v. Arnold*, 884 A.2d 316, 332 (Pa. Super. 2005).

59. Here, Onex agreed to purchase, and Rath agreed to deliver, Alsitra blankets for Onex's installation.

60. The basis of this agreement was Onex's purchase orders, Rath's invoices, and Onex's terms and conditions. Onex's purchase orders specifically refer to its terms and conditions, and nothing on Rath's invoices give any indication that those terms and conditions are rejected. True and correct copies of an Onex purchase order and Rath invoice are attached hereto as Exhibits C and D, respectively.

61. Section 8 of Onex's terms and conditions provide as follows: "In the event Onex rejects the Goods tendered by Vendor, Onex may, in its sole discretion and in addition to any other remedies available under law… correct, rework, and/or repair the Goods with all costs associated therewith to be charged to and paid by Vendor…." (Exhibit A, Section 8(b)).

62. After Lapp informed Onex that the Alsitra blankets were not performing as required, representatives of both Onex and Rath visited the site to view the problem firsthand. At that point, they agreed the refractory material needed to be repaired.

63. Later, Mr. Sabol expressly authorized Onex, on two separate occasions, to undertake the repair work at Lapp. The first authorization was at the January 29th meeting with

Mr. Walters and the Lapp representative, Mr. Maxwell. The second authorization was his February 12th conversation with Ms. Walters via telephone.

64. Despite this authorization, and the language of Section 8 of the Onex terms and conditions, Rath is now refusing to pay for the costs of the necessary and authorized repair work.

65. Onex is therefore being forced to bear the costs of repairing and replacing Rath's defective material, in violation of Rath's obligations under the terms and conditions, and in violation of the express authorization provided by Mr. Sabol.

66. Rath's refusal is in violation of the terms and conditions, which when Onex determines that materials are not acceptable, allow Onex to "terminate the Purchase Order and secure replacement Goods. Vendor shall bear any and all incidental costs associated with such rejection, including without limitation costs of removal, transportation, storage, and disposal of any non-conforming Goods…."

67. Rath has therefore breached the terms of its sale of Alsitra blankets to Onex by refusing to recover the cost of repairs necessary to its defective product, and refusing to remove the unused product which Onex has rejected.

WHEREFORE, Plaintiff Onex, Inc. respectfully requests that judgment be entered in its favor and against Defendant Rath USA Incorporated in an amount exceeding $75,000.00, along with all other relief allowed by law.

    Respectfully submitted,

    MIZNER LAW FIRM

    By: /s/ John F. Mizner

    John F. Mizner
    PA Bar No. 53323
    jfm@miznerfirm.com

                                        Joseph P. Caulfield
                                        PA bar No. 322823
                                        jpc@miznerfirm.com

                                        311 West Sixth Street
                                        Erie, Pennsylvania 16507
                                        814.454.3889

                                        *Attorneys for the Plaintiff*